## SCHULTZ v. CADWALADER, Collector.

*(Circuit Court, E. D. Pennsylvania. April 14, 1890.)*

1. CUSTOMS DUTIES—CLASSIFICATION—SULPHATE OF POTASH.
   Whether an importation of sulphate of potash is to be used expressly for manure or not, determines whether it is free, or subject to 20 per cent. duty.

2. SAME—FERTILIZERS.
   All imported substances, whether especially provided for *eo nomine,* or covered by any language descriptive of their origin or qualities, which subserve the purpose of enriching the soil, are free, under paragraph 505 of the free-list.

3. SAME—CONSTRUCTION OF LAWS.
   In relation to each other, paragraph 70 of Schedule A, Act 1883, is general, and paragraph 505 is specific, as differentiating from the larger class of articles, denominated "sulphate of potash,)" the smaller portion, "expressly used as manure."

At Law.

This suit arose with reference to Schedule A, par. 70, Tariff Index, (New,) of the tariff act of 1883, whereby a duty of 20 per cent. *ad valorem* is imposed upon sulphate of potash, while, in the free-list, guano, manure, and all substances expressly used for manure, are free from duty under paragraph 505, Id., and was brought by Henry R. Schultz to recover certain customs duties alleged to have been unlawfully exacted upon an importation of so-called "manure salt" per ship Cuba, entered May 4, 1888. It was contended by the government that it was sulphate of potash, and liable to a duty of 20 per cent. *ad valorem.* The testimony produced upon the trial showed that the article was in fact bought, sold, and used in trade under that name, but that the importation in suit was sold to a manufacturer of fertilizers; and the verdict was in favor of the plaintiff.

*Edward L. Perkins* and *James Collins Jones,* for plaintiff.

*William Wilkins Carr,* Asst. U. S. Atty., and *John R. Read,* U. S. Atty., for defendant.

McKENNAN, J., *(charging jury.)* This suit is brought to recover duties exacted upon an importation of goods, as is alleged, without authority in law. A cargo of sulphate of potash was discharged at this port, and duties assessed upon it, and paid to the collector, without any authority, as is claimed, on his part to exact the duties so paid. A similar case was before the circuit court of the United States in the

district of New York. *Heller v. Magone*, 38 Fed. Rep. 908. The portion of the tariff act which is in controversy here was before that court, and that case was determined by the court under circumstances which made it strikingly similar to the case now before you; and, as there ought to be uniformity of decisions, of course, on questions, especially under the tariff law, and as it is just and right, so far as possible, they ought to be decided the same way. I am disposed, therefore, to adopt the view of the judge who tried the case in New York, in order that a similar result shall be reached in this case, if the facts in the case render such decision proper and right.

I do not know the quantity of goods in the present suit, but it is stated on papers submitted to you. The collector, determining that the cargo fell within a certain section of the act of congress, assessed the duty of 20 per cent.; whereas, on the part of the importer, it is claimed that, under another section of the tariff law, they were not subject to any duty at all; they were free. That this article is sulphate of potash is beyond all question. It is so designated by the witnesses on both sides, and is so regarded in the trade. Whether, then, the duties claimed were chargeable under that portion of the tariff act which imposed a duty of 20 per cent., or whether they are free, is the question to be determined in this case. By paragraph 70 of the tariff act, Schedule A, 20 per cent. duty *ad valorem* is imposed upon sulphate of potash; and, in the free-list, guano, manures, and all substances expressly used for manure, are free from duty. So that whether this article comes within the scope of either of these sections is the question for you to determine. That this article is sulphate of potash is beyond all question; and under ordinary circumstances, therefore, a duty of 20 per cent. would be chargeable. Whether it is relieved or not from any duty is to be determined by the construction of paragraph 505, Tariff Act, which relieves guano, manure, and all substances expressly used for manure, free from duty. I do not regard the two sections as irreconcilably inconsistent. In the first place, sulphate of potash is subject to a duty of 20 per cent.; and, in the next place, sulphate of patash used for manure or as a fertilizer is free from duty. So that it may be regarded as properly understood by this act of congress that, while sulphate of potash is subject to a duty of 20 per cent., yet, if it is used for the purposes of manure, it is free from duty. (It depends therefore, upon the use to which the article is to be applied whether it is subject to duty, or falls within the purview of the free-list.) Exception for defendant.

As I have already said, all the witnesses on both sides speak of an article of sulphate of potash, which is subject to a duty of 20 per cent., (and it is to be determined now whether the use to which this article is applicable, or for which it is to be expressly used, takes it out of the operation of the portion of the act which subjects it to a duty of 20 per cent.) Exception for defendant. In the case in New York the article was sulphate of potash, upon which duty was imposed; but, as it was held by the judge to have been proved by the evidence that it

was to be expressly used for manure, it was held by him it was not subject to the duty imposed in the body of the act.

As I said before, this article was imported as sulphate of potash, and was therefore apparently subject to a duty of 20 per cent.; but for what purpose was it used? What is the meaning of that portion of the tariff act which relieves from duty all substances used for manure? I do not see what other construction can be given to the act of congress than this: that dutiable articles, if they are intended for use, or are imported for the purpose of being used, in manure, are relieved from the duty of 20 per cent. In the language of Judge LACOMBE, who tried the case in New York:

"The clause here, paragraph 505 in the free list, reading 'guano, manures, and all substances expressly used for manure,' very clearly expresses, and there seems no doubt that, by the use of this phrase, congress has plainly said, that all imported substances, whether especially provided for *eo nomine*, or covered by any general language descriptive of their origin or qualities, which subserve the purpose of enriching the soil, and thus increasing the crops to be raised upon it, should be free. That is the plain meaning of the paragraph as it stands. I think we should err, if, from some strained and over-elaborate examination of a great many other paragraphs in the act, we should seek to spell out some understanding or conception of what we might possibly infer was the intent of congress. We are entitled to take their intent as expressed by the plain language they have used. It is very true that the use of the word 'expressly' may make this paragraph difficult of application in very many cases, in fact in all cases, so far as the collector is concerned; but it gives us no trouble in this particular action, because there is abundant evidence here to warrant the holding that these particular importations were expressly used for manure. They have been traced from their importer into the hands of individuals whose sole business is the preparation of 'fertilizers' which word is a mere synonym for 'manure;' and, should the jury draw from the testimony any other inference than that the articles were expressly used for manure, I should be inclined to set aside the verdict. Therefore, I think it is unnecessary to send the question to them. The defendant refers to the well-settled rule of interpretation that a specific designation will prevail over a general one; but the clause which he contends to be a general one (paragraph 505, *supra*,) is in reality more specific than the paragraph under which he insists these imports should be classed, (paragraph 70, 'Sulphate of Potash,') because, from the general class of articles properly classified as sulphate of potash, it differentiates that smaller portion which are 'expressly used for manure.'"

So here, while the article which is the subject of importation is generically sulphate of potash, its dutiable character is to be determined by the use for which it was imported, or to which it is applied. It undoubtedly subjects the classification and dutiability of articles falling within the general scope of the act by the collector; but the question is whether, under the act of congress, the article is subject to duty or not, and that is to be determined by the purpose for which it is used or to be used. Was it for manure? (If so, under the view Judge LACOMBE takes of the law, it is not subject to duty, and in that decision I am inclined to concur.) Exception for defendant.

You have then here this article, which is described as sulphate of

potash, shown by the testimony to have been imported by a person who is engaged in the manufacture of fertilizers, of which the sulphate of potash is the principal constituent. It was therefore intended, so far as he was concerned, to be used as manure, and we must so conclude. It then passed by sale by him to a person who was engaged in the manufacture of fertilizers, and was used in the preparation of that article of merchandise. If that be so, then you will be justified in finding that this sulphate of potash was, within the meaning of the act of congress, expressly used for manure; and, if so, it was not subject to any duty. If you are satisfied upon that subject, then you would be justified in finding, and you would be bound to find, that the collector was in error in imposing any duty whatever upon this article. However difficult it might have been for him to ascertain that fact, yet it would seem to be necessary to the effectuation of the attempt of congress in relieving such articles from duty altogether to inquire into the use to which this article was applied after it passed into the hands of the manufacturer. (I therefore instruct you, if you find that this article was used in the manufacture of manure, or was used as manure, that it is not subject to a duty, and your verdict should be for the plaintiff.) Exception for defendant.

The plaintiff and defendant have both submitted to me certain points upon which they ask me to instruct you; but, taking the view that was taken by the judge of the circuit court of the United States at New York, and desiring that there should be uniformity of opinion upon the construction of the act of congress as far as possible, I instruct you as I have done, and decline to instruct you as asked by the counsel for the plaintiff or defendant. If you find as I have stated, then your simple duty is to ascertain the amount of duties paid by the plaintiff here, and find a verdict in his favor for the amount so paid. Of course, I mean this importation, which is the subject before you.

### PLAINTIFF'S POINTS.

"(1) If you find that the article constituting the subject of this suit is not commercially known as 'sulphate of potash,' and that it is expressly used for 'manure,' your verdict must be for the plaintiff.

"(2) Even if you find that the article in question is sometimes known commercially as 'sulphate of potash,' if you also find that there are other varieties of sulphate of potash used for purposes other than as manure, and that the article in question is used expressly for manure, then your verdict must be for the plaintiff.

"($2\frac{1}{2}$) If, upon all the facts in this case, there exists in your minds a doubt, your verdict must be for the plaintiff, as duties are never to be imposed on the citizen upon vague or doubtful interpretations.

"(3) Under all the evidence in this case, your verdict must be for the plaintiff."

### DEFENDANT'S POINTS.

"(1) It having been shown that the article in suit is bought, sold, and used in trade as sulphate of potash, it is provided for in the tariff act of 1883 under that name; and your verdict should be for the defendant."

Refused. Exception for defendant.

"(2) The article in suit is not provided for in the provisions of the tariff act of paragraph 505, Tariff Index, (New,) of the free-list, ' all substances used for manure,' inasmuch as the evidence shows that the substance in suit is not so used, ' in the manufacture of manure or fertilizers only;' and your verdict should be for the defendant."

Refused. Exception for defendant.

"(3) The article in suit is sulphate of potash, and the tariff thereon is provided for, for that article specifically, and will not be assessed under the more general expression contained in paragraph 505, Id., ' all substances used for manure,' and your verdict should be for the defendant."

Refused. Exception for defendant.

"(4) Your verdict in this case should be for the defendant."

Refused. Exception for defendant.

The jury rendered a verdict in favor of plaintiff.